UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN PROVINCE, and RONALD HOWARD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIDLAND FUNDING, LLC, and MIDLAND CREDIT MANAGEMENT, INC.,<br><br>Defendants. | Case No. 3:20-cv-110<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Helen Province and Ronald Howard ("Plaintiffs") bring this action against Midland Funding, LLC, and Midland Credit Management, Inc. ("Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. This action is brought against Defendants for their violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §§ 2270.1 *et seq.*, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*, and the Consumer Discount Company Act ("CDCA"), 7 P.S. §§ 6201, *et seq.*

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction of Plaintiffs' federal law claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692.

3. The Court has subject matter jurisdiction of Plaintiffs' state law claims under 28 U.S.C. § 1332 because there are over 100 class members, at least one class member and Defendant are citizens of different states, and the amount in controversy exceeds $5 million.

4. The Court also has subject matter jurisdiction of Plaintiffs' state law claims under 28 U.S.C. § 1367 because Plaintiffs' state law claims are so related to the federal claims that they form part of the same case or controversy.

5. The Court has personal jurisdiction over Defendants because Plaintiffs' claims arose in this district and Defendants do substantial business in this district.

6. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events and/or omissions at issue occurred in this district.

## PARTIES

7. Plaintiff Province is a person residing in Clearfield County, Pennsylvania.

8. Plaintiff Howard is a person residing in Westmoreland County, Pennsylvania.

9. Defendants are business entities with their principal place of business in San Diego, California.

10. Midland Funding purchases personal consumer loans from non-bank finance companies.

11. Midland Funding purchases these loans for pennies on the dollar.

12. Midland Funding purchases these loans to collect debt for profit.

13. Midland Credit Management collects the loans Midland Funding purchases, either directly or indirectly, by calling consumers, sending letters, filing lawsuits against consumers, and reporting information to consumer reporting agencies.

14. Defendants use the instrumentalities of interstate commerce to collect debt, including telephone, mail, and the internet.

## THE CONSUMER DISCOUNT COMPANY ACT

15. The CDCA is a consumer protection law enacted by the Pennsylvania legislature in 1937. *See* 7 P.S. §§ 6201-6219.

16. The CDCA regulates personal consumer loans in amounts of $25,000 or less, with interest and fees that aggregate above the six percent interest rate cap provided in the Loan Interest Protection Law ("LIPL"). 7 P.S. § 6203; 41 P.S. § 201(a).

17. Non-bank debt buyers cannot purchase or collect CDCA loans without a CDCA license. 7 P.S. § 6203.A.

18. CDCA licenses are not assignable. 7 P.S. § 6208.

19. CDCA licensees cannot assign their rights under the CDCA to non-CDCA licensed entities. 10 Pa. Code § 41.6(a).

20. The CDCA prohibits unlicensed debt buyers from purchasing CDCA loans from licensed consumer discount companies unless the Department of Banking issues prior written approval. 7 P.S. § 6214.I; 10 Pa. Code § 41.6(a).

21. The Department of Banking issues prior written approval for loan transfers from licensed consumer discount companies to unlicensed debt buyers only if unlicensed debt buyers agree to forgo collecting or receiving previously charged or precomputed interest or fees above the LIPL's six percent interest rate cap. *See* Letter, Department of Banking, p. 22 (Nov. 19, 2001) (attached as Exhibit 1) (stating unlicensed entities buying CDCA loans from consumer discount companies with written approval from the Department must "ensure that every loan contract [they] acquire[] d[oes] not already include in the balance owed interest, fees and other charges in excess of the general usury limit"); Letter, Department of Banking, p. 3 (Sept. 18, 2003) (attached as Exhibit 2) (stating transfer of CDCA loan from a licensed consumer discount company to an

unlicensed entity would be approved only if the unlicensed entity "collect[ed] from consumers the general Pennsylvania usury rate of 6% simple interest *per annum*"); Letter, Department of Banking, p. 1 (attached as Exhibit 3) (Jan. 12, 2004) (approving transfer of CDCA loans from a licensed consumer discount company to an unlicensed debt purchaser, and stating that the unlicensed entity "may only collect the general Pennsylvania usury rate of 6% simple interest *per annum* and may not impose any other charges").

22. When CDCA licensees sell CDCA loans to unlicensed debt buyers, the sales are void and legally unenforceable. *Mellish v. CACH, LLC*, No 19-cv-1217, 2020 U.S. Dist. LEXIS 52383, at *11 (W.D. Pa. Mar. 26, 2020) ("If CACH did not get approval from the Department before purchasing the loan account, then CACH could not lawfully purchase the loan account, thereby causing the sale contract between Springleaf and CACH to have an illegal purpose. The sale contract is therefore void and unenforceable. CACH and Resurgent consequently did not have the legal authority to seek collection on [the plaintiff's] loan account.").

23. Equitable relief is available to private parties under the CDCA. *Id.* at *7 ("If a private civil litigant seeks enforcement of the CDCA, the available remedy is equitable."); *see also* Exhibit 1, p. 13 ("[I]t is clear that a CDCA loan contract that has been purchased by a person who lacks the authority to do so cannot be performed without violating the CDCA. Therefore, such a CDCA loan contract might very well be void[.]").

24. Purchasing or attempting to collect CDCA loans without a license, or without the Department of Banking's prior written approval, is a criminal act. 7 P.S. § 6218.

# FACTUAL ALLEGATIONS

**I.   Midland Funding Illegally Purchased And Continues To Attempt To Collect On The Accounts Issued To Plaintiffs Province And Howard.**

25. OneMain Financial ("OneMain") issued personal loan accounts (the "Accounts") to Plaintiff Province and Plaintiff Howard.

26. At some unknown time, Midland Funding allegedly purchased the Accounts issued by OneMain to Plaintiff Province and Plaintiff Howard.

27. OneMain was licensed as a consumer discount company under the CDCA when the Accounts were issued.

28. OneMain was licensed as a consumer discount company under the CDCA when it allegedly sold the Accounts to Midland Funding.

29. After Midland Funding allegedly purchased the Accounts, Midland Credit Management began attempting to collect the Accounts on behalf of Midland Funding.

30. On March 27, 2017, Defendants sued Plaintiff Province in a Clearfield County Magisterial District Court.

31. On June 8, 2018, Defendants sued Plaintiff Howard in a Westmoreland County Magisterial District Court.

32. Plaintiff Province and Plaintiff Howard obtained an attorney to defend the lawsuits filed against them by Defendants.

33. Rather than attempt to prove their alleged claims against Plaintiff Province and Plaintiff Howard, Defendants dismissed their lawsuits shortly before trial.

34. Defendants have continued to attempt to collect the Accounts from Plaintiff Province and Plaintiff Howard.

35. As recently as April 7, 2020, Defendants reported the Accounts to various consumer reporting agencies.

36. Defendants will continue to attempt to collect the Accounts, either by reporting the Accounts to consumer reporting agencies or through other means.

## II. Midland Funding Illegally Purchased Thousands Of Personal Loans Issued To Pennsylvania Consumers.

37. Midland Funding has allegedly purchased many personal consumer loans issued to Pennsylvanians across the Commonwealth from non-bank finance companies licensed under the CDCA.

38. These loans uniformly include previously charged or precomputed interest and fees that aggregate in excess of six percent simple interest per year.

39. These loans are referred to as the "Class Accounts."

40. Midland Funding's purchase of the Class Accounts was illegal, unenforceable, and void.

41. Midland Funding has never been and is not licensed under the CDCA.

42. Midland Funding has never been and is not a state or federal financial institution.

43. Midland Funding did not obtain prior written approval from the DOB to purchase the Class Accounts as an unlicensed non-bank debt collector.

44. Midland Funding's failure to obtain approval is demonstrated by the fact that when Defendants attempted to collect the Class Accounts from Plaintiffs and the class members, Defendants uniformly attempted to collect and receive previously charged or precomputed interest and fees that combined to exceed six percent simple interest per year.

45. The Department of Banking approves CDCA loan transfers to unlicensed non-bank debt buyers only if the unlicensed buyers forgo collecting or receiving previously charged or

precomputed interest and fees that combine to exceed six percent simple interest per year. *See* Exhibits 1-3; *see also* 7 P.S. § 6203.A (prohibiting unlicensed entities from collecting or receiving excessive interest and fees).

46.  When Defendants attempted to collect the Class Accounts from Plaintiffs and the class members, Defendants uniformly sought to collect and receive previously charged or precomputed interest and fees that combined to exceed six percent simple interest per year.

47.  Had Midland Funding obtained prior written approval from the DOB to purchase the Class Accounts, Defendants would have been contractually and legally prohibited from seeking to collect or receive the excessive interest and fees they sought to collect and receive.

48.  Since Midland Funding was not licensed under the CDCA, was not a state or federal financial institution, and did not obtain prior written approval from the Department of Banking to purchase the Class Accounts, Midland Funding's purchase of the Class Accounts was illegal, unenforceable, and void.

49.  Defendants consequently did not have the legal authority to seek collection of the Class Accounts through legal process or otherwise.

**III.   Defendants Seek To Collect Their Illegal Loan Purchases Through Mass Lawsuit Filing Campaigns And Sustained Credit Reporting.**

50.  After illegally purchasing personal consumer loans, Defendants engaged a two-prong strategy to collect the Class Accounts.

51.  Initially, Defendants filed suit on the Class Accounts.

52.  Defendants used these lawsuits to pressure Pennsylvania residents to make settlement payments on the Class Accounts.

53.  When consumers ignored Defendants' lawsuits, Defendants obtained a default judgment and then continued to contact consumers to collect the Class Accounts.

54. When consumers contested Defendants' lawsuit, either individually or through legal representation, Defendants uniformly dismissed the lawsuits a few days to about a week before trial was scheduled.

55. Afterward, Defendants continued contacting consumers to collect the Class Accounts.

56. Regardless of whether consumers ignored or contested Defendants' lawsuits, Defendants continued reporting the Class Accounts to various consumer reporting agencies.

57. Defendants' continued communications following their lawsuits are made to extract payment on the Class Accounts.

58. Defendants' pre- and post-lawsuit communications concerning the Class Accounts represented or implied that Midland Funding lawfully purchased the Class Accounts and that Defendants had authority to collect the Class Accounts.

59. These representations are false because Midland Funding purchased the Class Accounts unlawfully and Defendants did not have legal authority to collect the Class Accounts.

60. By concealing the illegality of Midland Funding's unlawful loan purchases, Defendants were able to file lawsuits against many Pennsylvania residents, extract settlement payments from others, and damage the reputation and credit scores of countless more.

**IV.    Plaintiffs And The Class Members Were Injured And Continue To Suffer Irreparable Harm As A Result Of Defendants' Unlawful Conduct.**

61. Defendants' unlawful debt buying and collection activities have caused sustained injury to Plaintiffs and the class members over a period of years.

62. For years, Plaintiffs and the class members received communications from Defendants seeking to collect personal consumer loans Midland Funding could not lawfully purchase and Defendants could not lawfully collect.

63. Plaintiffs and the class members also were unfairly subjected to legal process on loans Midland Funding could not lawfully purchase and Defendants could not lawfully collect.

64. Some of the class members, including Plaintiffs, were forced to retain and pay attorneys to defend against Defendants' lawsuits.

65. Plaintiffs and the class members continue to receive communications from Defendants concerning the Class Accounts.

66. Defendants continue to report the Class Accounts to various consumer reporting agencies.

67. Plaintiffs and the class members should not have been subject to these attempts to collect the Class Accounts because Midland Funding could not lawfully purchase the Class Accounts and Defendants could not lawfully collect the Class Accounts.

68. Defendants' collection activities injured Plaintiffs and the class members, causing emotional distress, monetary harm, and damage to the reputation and credit ratings of Plaintiffs and the class members.

69. Defendants collection activities also made it more difficult for Plaintiffs and the class members to, among other things, purchase goods and services, obtain financing, obtain employment, and obtain housing.

70. Plaintiffs and the class members continue to suffer harm as a result of Defendants' collection activities because Defendants continue to contact Plaintiffs and the class members concerning the Class Accounts, and Defendants continue to report the Class Accounts to various consumer reporting agencies.

## V. Defendants Knew Their Conduct Was Unlawful But Continued To Pursue Collection Against Plaintiffs And The Class Members.

71. Defendants knew the Class Accounts were purchased unlawfully.

72. Defendants also knew they could not lawfully attempt to collect the Class Accounts from Plaintiffs and the class members.

73. As early as 2001, the Department of Banking publicly stated that debt buyers, like Midland Funding, must be licensed under the CDCA to purchase CDCA loans, like the Class Accounts. *See* Exhibit 1, pp. 6-22.

74. Similarly, as early as 2001, the Department publicly stated that unlicensed debt buyers, like Midland Funding, must obtain prior written approval to purchase CDCA loans, like the Class Accounts. *Id.*

75. In other words, Defendants have known for close to two decades that the conduct at issue here was unlawful.

76. Defendants further knew their conduct was unlawful because undersigned counsel filed suit against Defendants in the middle of 2019 for conduct similar to that alleged in this action. *See Zirpoli v. Midland Funding, LLC et al.*, 19-cv-1428 (M.D. Pa.).

77. The allegations of that lawsuit, like this lawsuit, alleged that Defendants could not collect the Class Accounts because Midland purchased the Class Accounts unlawfully and Defendants could not collect the Class Accounts as a result.

78. Nevertheless, Defendants continue to report the Class Accounts to various credit reporting agencies, and Defendants continue to attempt to collect the Class Accounts from Plaintiffs and the class members.

79. Defendants will continue to attempt to collect the Class Accounts and will continue to cause irreparable harm to Plaintiffs and the class members.

## CLASS ALLEGATIONS

80. Plaintiffs bring this action individually and on behalf of all others similarly situated under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

81. Plaintiffs seek to certify the following classes:

**The FDCPA Class**

All individuals who, within the applicable statute of limitations, had Defendants attempt to collect, either directly or indirectly, on a loan that was issued by or purchased from an entity licensed as a consumer discount company under the CDCA.

**The Ascertainable Loss Class**

All individuals who, within the applicable statute of limitations, lost money or property as a result of an attempt by Defendants to collect on a loan that was issued by or purchased from an entity licensed as a consumer discount company under the CDCA.

**The Collection Class**

All individuals who, at the time this case was filed: i) had Defendants purchase a loan that was issued by or purchased from an entity licensed as a consumer discount company under the CDCA; ii) did not pay off the loan; and iii) did not obtain a judgment against Defendants in a lawsuit Defendants filed against them on such loan, were not yet sued by Defendants on such loan, or have a pending lawsuit Defendants filed against them on such loan.

82. Plaintiffs reserve the right to expand, narrow, or otherwise modify the classes as the litigation continues and discovery proceeds.

83. <u>Numerosity:</u> The classes are so numerous that joinder is impracticable. There likely are hundreds of members of each class.

84. <u>Ascertainability:</u> The classes are ascertainable because Defendants, the courts, and the relevant creditors keep and collect identifying information on each class member.

85. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the classes because the claims of Plaintiffs and the classes are based on the same legal theories and arise from the same conduct.

86. <u>Commonality and Predominance</u>: Plaintiffs and the class members share numerous common questions of law and fact that will drive the resolution of this litigation and that predominate over any individual issues. For example, there is a single common answer to the question of whether Midland Funding was permitted to purchase loans issued or held by non-bank finance companies licensed under the CDCA. Similarly, there is a single class-wide answer to whether Defendants can collect or attempt to collect loans Midland Funding cannot lawfully purchase. These and other common questions of law and fact will predominate over any individual issues.

87. <u>Adequacy</u>: Plaintiffs are adequate representatives of the classes because Plaintiffs' interests do not conflict with the interests of the class members. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the classes. Plaintiffs have no interest antagonistic to the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation generally and FDCPA litigation specifically.

88. <u>General Applicability</u>: Defendants have acted or refused to act on grounds that apply generally to the class, such that injunctive, equitable, or declaratory relief is appropriate respecting the class as a whole.

89. <u>Superiority</u>: The injury sustained by each class member is not of such magnitude that it is economically feasible to prosecute individual actions against Defendants. Requiring many injured plaintiffs to file individual actions would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment presents far fewer

management difficulties and provides benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
### Violation of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 *et seq.*

90. Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

91. This claim is brought individually by Plaintiffs Province and Howard and on behalf of the FDCPA Class.

92. Plaintiffs are consumers under the FDCPA, the Account is a debt under the FDCPA, and Defendants are debt collectors under the FDCPA. 15 U.S.C. §§ 1692a(3), (5), (6).

93. Defendants' actions and practices described herein constitute as: false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e; and/or unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

94. As a result of Defendants' failure to comply with the provisions of the FDCPA, and the resulting injury and harm Midland's failure caused, Plaintiffs are entitled to actual damages, statutory damages, and attorneys' fees and costs under 15 U.S.C. § 1692k.

## COUNT II
### Violation of the Fair Credit Extension Uniformity Act
### 73 P.S. §§ 2270 *et seq.*

95. Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

96. This claim is brought individually by Plaintiff Howard and on behalf of the Ascertainable Loss Class.

97. Plaintiff Howard is a consumer under the FCEUA, the Account is a debt under the FCEUA, and Defendants are debt collectors or creditors under the FCEUA. 73 P.S. § 2270.3.

98. In the event Defendants are debt collectors, their actions and practices described herein constitute unfair and/or deceptive debt collection acts or practices under the FCEUA because they violate 15 U.S.C. §§ 1692e and/or 1692f, as explained above. 73 P.S. § 2270.4(a).

99. In the event Defendants are creditors, their actions and practices described herein constitute as unfair or deceptive debt collection acts or practices under the FCEUA because they constitute as: false, deceptive or misleading representations or means in connection with the collection of a debt; and/or unfair or unconscionable means to collect or attempt to collect a debt. 73 P.S. § 2270.4(b).

100. Defendants' use of unfair or deceptive debt collection acts or practices under the FCEUA constitutes violations of the UTPCPL. 73. P.S. § 2270.5(a).

101. Plaintiff Howard lost money or property as a result of Defendants' violations and therefore are entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 P.S. § 201-9.2.

**COUNT III**
**Violation of the Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §§ 201-1** *et seq.*

102. Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

103. This claim is brought individually by Plaintiffs Province and Howard and on behalf of the Ascertainable Loss Class.

104. Defendants and Plaintiffs are persons under the UTPCPL, the Account arose from the purchase or lease of goods or services primarily for personal, family or household purposes under the UTPCPL, and Defendants' actions and practices described herein were conduct as part of trade or commerce under the UTPCPL. 73 P.S. §§ 201-2(2)-(3), 201-9.2.

105. Defendants' actions and practices described herein constitute as unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because Defendants are engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi).

106. Defendants' use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

107. Plaintiffs lost money or property as a result of Defendants' violations and therefore are entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 P.S. § 201-9.2.

### COUNT IV
### Violation of the Consumer Discount Company Act
### 7 P.S. §§ 6201, *et seq.*

108. Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

109. This claim is brought individually by Plaintiffs Province and Howard and on behalf of the Collection Class.

110. Defendants continue to collect the Class Accounts while violating numerous provisions of the CDCA.

111. Midland Funding was required to obtain prior written approval to have the legal right to purchase, hold, and collect on the Class Accounts. 7 P.S. § 6214.I ("A licensee may not sell contracts to a … corporation not holding a [CDCA] license … without the prior written approval of the Secretary of Banking.").

112. Midland Funding did not obtain and has not obtained the required approval to purchase, hold, or collect the Class Accounts.

113. By attempting to collect personal consumer loans Midland Funding cannot lawfully purchase, hold, or collect, Defendants continue to violate Section 6214 of the CDCA.

114. In order to collect or purchase the Class Accounts, Midland Funding was required to obtain a CDCA license. *See* 7 P.S. § 6203.A ("On and after the effective date of [the CDCA], no person shall engage or continue to engage in this Commonwealth, either as principal, employe, agent or broker, in the business of negotiating or making loans or advances of money on credit, in the amount or value of twenty-five thousand dollars ($ 25,000) or less, and charge, collect, contract for or receive interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of the interest that the lender would otherwise be permitted by law to charge if not licensed under this act[.]").

115. Midland Funding has never been licensed under the CDCA.

116. By attempting to collect personal consumer loans Midland Funding cannot lawfully purchase, hold, or collect, Defendants continue to violate Section 6203 of the CDCA.

117. These ongoing violations are considered misdemeanor criminal acts under the CDCA. *See* 7 P.S. 6218.

118. Equitable relief is available to private plaintiffs for ongoing CDCA violations. *See Mellish*, No 19-cv-1217, 2020 U.S. Dist. LEXIS 52383, at *7; *see also* Exhibit 1, pp. 13-14.

119. Plaintiffs accordingly request that the court enjoin Defendants from continuing to collect the Class Accounts.

120. Plaintiffs additionally request that the court declare the Class Accounts void and unenforceable.

121. Defendants' actions have caused irreparable injury to Plaintiffs and the class members in the form of monetary harm, damage to the reputation and credit ratings of Plaintiffs and the class members, and emotional distress.

122. Defendants will continue to cause harm to Plaintiffs and the class members by continuing to collect the Class Accounts from Plaintiffs and the class members.

123. The remedies at law are inadequate to compensate for these injuries.

124. The balance of hardships between Plaintiffs and the class members and Defendants warrant equitable relief, as Defendants continue to attempt to collect loans Defendants had no legal right to purchase or hold, and no legal authority to collect.

125. The public interest will be served through injunctive relief, as an injunction will prevent Defendants from continuing to violate the rights of Plaintiffs and the class members.

126. Accordingly, Plaintiffs request the following relief for Defendants' violations of the CDCA: i) an order that permanently prohibits Defendants from taking any action to attempt to collect the Class Accounts from Plaintiffs and the class members; ii) a declaration that the Class Accounts are void and unenforceable; and iii) an order providing Plaintiffs and the class members restitution for any money paid on the Class Accounts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

a. An order certifying the proposed classes, appointing Plaintiffs as the class representatives, and appointing undersigned counsel as class counsel;

b. An order awarding actual, statutory, treble, nominal, and all other damages available by law, along with pre-and post-judgment interest;

c. An order awarding restitution for any money paid to Defendants on the Class Accounts;

    d.  An order awarding attorney's fees and costs;

    e.  An order permanently enjoining Defendant from taking any action to collect the Class Accounts;

    f.  An order declaring the Class Accounts void, or alternatively, unenforceable; and

    g.  An order awarding all other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: June 8, 2020                        By:  */s/ Kevin Abramowicz*
                                                                     Kevin Abramowicz
                                                                       Kevin W. Tucker
                                                                       **EAST END TRIAL GROUP, LLC**
                                                                       186 42nd Street
                                                                       P.O. Box 40127
                                                                       Pittsburgh, PA 15201
                                                                       Tel: (412) 223-5740
                                                                       Fax: (412) 626-7101
                                                                       kabramowicz@eastendtrialgroup.com
                                                                       ktucker@eastendtrialgroup.com

                                                                       *Attorneys for Plaintiffs*